UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) No. 3:18-CR-__85__ |
| v. | ) |
| | ) |
| RANDALL SCOTT JENKINS | ) |

**PLEA AGREEMENT**

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, RANDALL SCOTT JENKINS, and the defendant's attorney, Douglas A. Trant, have agreed upon the following:

1. The defendant will waive indictment and arraignment and plead guilty to an information charging the defendant with the following offenses:

   a) Count One. On or about April 20, 2018, within the Eastern District of Tennessee, RANDALL SCOTT JENKINS, who was then employed by, and was an agent of, an organization in the supply chain for pre-retail medical products, did embezzle, steal, and by fraud and deception obtain, and knowingly and unlawfully take, carry away, and conceal a pre-retail medical product from the City Drug Co., to wit: a bottle oxycodone, in violation of 18 U.S.C. §§ 670(a)(1) and (b)(1).

   The punishment for this offense is as follows: A term of imprisonment of up to five (5) years, a fine of up to $250,000, a term of supervised release of up to three (3) years, mandatory restitution, and a mandatory $100 special assessment.

   b) Count Two. On or about April 30, 2018, within the Eastern District of Tennessee, RANDALL SCOTT JENKINS, who was then employed by, and was an agent of, an organization in the supply chain for pre-retail medical products, did embezzle, steal, and by fraud

and deception obtain, and knowingly and unlawfully take, carry away, and conceal a pre-retail medical product from the City Drug Co., to wit: a bottle of oxycodone, in violation of 18 U.S.C. §§ 670(a)(1) and (b)(1).

The punishment for this offense is as follows: A term of imprisonment of up to five (5) years, a fine of up to $250,000, a term of supervised release of up to three (3) years, mandatory restitution, and a mandatory $100 special assessment.

        c)     Count Three. Between on or about November 5, 2017 and May 7, 2018, within the Eastern District of Tennessee, RANDALL SCOTT JENKINS, being an unlawful user of a controlled substance, did knowingly possess in and affecting interstate commerce, firearms and ammunition, in violation of 18 U.S.C. § 922(g)(3).

The punishment for this offense is as follows: A term of imprisonment of up to ten (10) years, a fine of up to $250,000, a term of supervised release of up to three (3) years, and a $100 mandatory special assessment.

        2.     The defendant has read the information, discussed the charges and possible defenses with defense counsel, and understands the crime(s) charged. Specifically, the elements of the offense(s) are as follows: As to Counts 1 and 2, the elements are that the defendant (1) while using any means or facility of interstate commerce, (2) embezzled, stole, or by fraud or deception obtained, or knowingly and unlawfully took, carried away, or concealed a pre-retail medical product, and (3) at the time of the crime, defendant was employed by, or was an agent of, an organization in the supply chain for the pre-retail medical product. As to Count 3, the elements are that the defendant (1) while being an unlawful user of a controlled substance, (2) knowingly possessed a firearm or ammunition in and affecting commerce.

3. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

   a) Defendant has been a licensed pharmacist for approximately three decades. Since approximately 2002, defendant was the co-owner of City Drug Co., a pharmacy located in Maryville, Tennessee. At all relevant times, City Drug Co. was engaged in interstate commerce and was registered with the Drug Enforcement Administration under section 302 of the Controlled Substances Act. City Drug Co., through its agents, including defendant, purchased and distributed various drugs, including oxycodone and oxymorphone, which are manufactured outside the state of Tennessee.

   b) Defendant was captured on City Drug Co. surveillance cameras stealing from the controlled substance vault bottles of pre-retail oxycodone on or about April 20 and 30, 2018. The two pre-retail oxycodone bottles stolen by defendant contained 100 tablets each. Oxycodone and oxymorphone are potent, powerful, addictive, and easily abused painkillers and are available only by a valid prescription issued by licensed physician, and the prescription must be within the scope of professional practice and prescribed for a legitimate medical purpose.

   c) Defendant, himself addicted to oxycodone and oxymorphone, had no prescription for oxycodone, and he stole the pre-retail bottles of oxycodone so that he could satisfy his own addiction to the painkillers. Defendant admits that he, while using a means and facility of interstate commerce, stole the bottles of pre-retail oxycodone from City Drug Co., and that the total amount of stolen pre-retail oxycodone was less than $5,000 worth of oxycodone. Defendant further admits

that, at the time of his thefts of the pre-retail oxycodone, he was an agent of City Drug Co., which is an organization within the supply chain for the pre-retail oxycodone.

d) After the thefts were discovered, on or about May 7, 2018, law enforcement questioned defendant concerning any additional bottles, including empty bottles, of stolen prescription painkillers. While defendant admitted to law enforcement that defendant had a drug addiction problem, regarding any empty bottles of stolen prescription painkillers, defendant told law enforcement, "I don't keep trophies." On the same day, defendant was found in possession of a bottle of oxymorphone and a bottle of oxycodone; defendant had no valid prescription for either drug. Additionally, law enforcement located a loaded Smith & Wesson semi-automatic pistol in defendant's Jeep. Defendant admits that both the Smith & Wesson semi-automatic pistol and his Jeep, which defendant used to transport the stolen bottles of oxycodone from City Drug Co. to his home, were manufactured outside the state of Tennessee.

e) Further investigation revealed that on or about November 5, 2017, defendant was apprehended at the security checkpoint at McGhee-Tyson Airport with a loaded Sig Sauer semi-automatic pistol. Defendant admits that this Sig Sauer semi-automatic pistol was manufactured outside the state of Tennessee.

f) On May 21, 2018, federal agents and task force officers executed a federal search warrant at defendant's home in Maryville, Tennessee. The search resulted in the seizure of, among other items:

- A prescription pill bottle with no label containing hydrocodone tablets;

- Pre-retail pill bottles factory labeled for and containing oxycodone 30mg pills, which were located in defendant's master bedroom closet hidden under clothes;

- A pre-retail pill bottle factory labeled for and containing oxycodone 15mg pills, which was located in defendant's master bedroom closet hidden under clothes;

4

- 19 firearms and ammunition, including the aforementioned Smith & Wesson and Sig Sauer semi-automatic pistols.

g) Interviews of City Drug Co. employees revealed that defendant frequently carried a firearm with him within the pharmacy. Defendant admits that from November 5, 2017 through May 7, 2018, on divers days, he illegally possessed firearms and ammunition in and affecting interstate commerce while regularly abusing controlled substances without a valid prescription.

h) Defendant admits that he will pay restitution to City Drug Co. for the pre-retail pharmaceuticals that he stole and defendant further admits that he will voluntarily and permanently surrender his pharmacy license to the Tennessee Board of Pharmacy.

4. The defendant is pleading guilty because the defendant is in fact guilty. The defendant understands that, by pleading guilty, the defendant is giving up several rights, including:

a) the right to be indicted by a grand jury for these crimes;

b) the right to plead not guilty;

c) the right to a speedy and public trial by jury;

d) the right to assistance of counsel at trial;

e) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

f) the right to confront and cross-examine witnesses against the defendant;

g) the right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and

h) the right not to testify and to have that choice not used against the defendant.

5. The parties agree that the appropriate disposition of this case would be the following as to each count:

5

a) The Court may impose any lawful term(s) of imprisonment, any lawful fine(s), and any lawful term(s) of supervised release up to the statutory maximum(s);

b) The Court will impose special assessment fees as required by law; and

c) The Court may order forfeiture as applicable and restitution as appropriate.

No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court, and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea(s). The defendant understands that the sentence in this case will be determined by the Court after it receives the presentence investigation report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

6. Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offense(s), including violations of conditions of release or the commission of any additional offense(s) prior to sentencing, the United States will be free to decline to make such

motion, to withdraw that motion if already made, and to recommend to the Court that the defendant not receive any reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

7. The defendant agrees to pay the special assessment in this case prior to sentencing.

8. The defendant agrees to abandon any interest in the firearms and ammunition that were seized in this case, as referenced in paragraph 3(f) above, and currently in the custody of the Smyrna Police Department in Smyrna, Tennessee. The defendant further agrees to take all such steps to abandon said property, including agreeing to any civil, criminal, or state forfeiture action.

9. Financial Obligations. The defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or

7

Case 3:18-cr-00085-TAV-HBG   Document 10   Filed 11/01/18   Page 7 of 10   PageID #: 53

other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

      a)      If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

      b)      The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

      c)      If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's Office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

10.      The defendant acknowledges that the principal benefits to the United States of a plea agreement include the conservation of limited government resources and bringing a certain end to the case. Accordingly, in consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the offenses committed, the defendant voluntarily, knowingly, and intentionally agrees to the following:

      a)      The defendant will not file a direct appeal of the defendant's convictions or sentence with one exception: The defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater. The defendant also waives the right to appeal the Court's determination as to whether the defendant's sentence will be consecutive or partially concurrent to any other sentence.

b) The defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's convictions or sentence, with two exceptions: The defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

c) The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

11. This plea agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this plea agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this plea agreement in any way (including but not limited to failing to enter guilty plea(s) as agreed herein, moving to withdraw guilty plea(s) after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea(s) in this case.

12. The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though there may or may not be any additional terms. If additional terms are included in the supplement, they are hereby fully incorporated herein.

13. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

J. DOUGLAS OVERBEY
UNITED STATES ATTORNEY

Nov. 1, 2018
Date

By: _____
David P. Lewen, Jr.
Assistant United States Attorney

10/23/18
Date

_____
Randall Scott Jenkins
Defendant

10/23/18
Date

_____
Douglas A. Trant
Attorney for the Defendant

10